REVISED DECEMBER 13, 2002

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 01-21264
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

VERSUS

JOEL LOPEZ-ORTIZ,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____

November 18, 2002

Before JOLLY, DUHÉ and DENNIS, Circuit Judges.

DUHÉ, Circuit Judge:

The United States appeals the district court's order suppressing Joel Lopez-Ortiz's prior removal and dismissing the indictment against him for illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2). We hold that the hearing at which Lopez-Ortiz's removal order was issued was not fundamentally unfair. Because, under 8 U.S.C. 1326(d) and United States v. Mendoza-Lopez,481 U.S. 828, 107 S. Ct. 2148 (1987), fundamental unfairness is necessary for collateral challenge of a removal order, we REVERSE and remand for trial.

I. BACKGROUND

Joel Lopez-Ortiz is a citizen of Mexico who obtained permanent resident alien status in the United States in 1990. In 1995, Lopez-Ortiz, who previously had been convicted twice of misdemeanor driving while intoxicated (DWI), pleaded guilty to felony possession of cocaine.

After Lopez-Ortiz's cocaine possession plea, Congress changed immigration law with the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Among the changes was abolition of discretionary waiver of removal, formerly available under §212(c) of the Immigration and Nationality Act ("§ 212(c) relief"), for aliens convicted of aggravated felonies.

In 1998, Lopez-Ortiz was arrested for felony third-offense DWI. Before the felony DWI could be adjudicated, the INS discovered Lopez-Ortiz in the Tarrant County Jail. Lopez-Ortiz was served with a Notice to Appear, the INS having determined based on the 1995 cocaine conviction that he was removable as an aggravated felon.

At the removal hearing, the Immigration Judge advised Lopez-Ortiz to obtain counsel. Lopez-Ortiz waived counsel, admitted the factual allegations in the Notice to Appear, and conceded that he was removable as an aggravated felon. Neither the Immigration Judge nor anyone at the INS told Lopez-Ortiz that he was eligible to apply for § 212 (c) relief. The Immigration Judge told Lopez-

2

Ortiz that he had the right to appeal, but that he would have to remain in detention pending appeal and pay for an attorney. When Lopez-Ortiz asked if an appeal would enable him to get his green card back, the Immigration Judge answered that such an outcome was unlikely. Lopez-Ortiz waived administrative appeal and was deported.

Lopez-Ortiz reentered the United States and was convicted of the felony DWI in 2000. He was discovered by the INS while serving his sentence, and this prosecution for illegal reentry under 8 U.S.C. § 1326 (a) and (b)(2) followed.[1] Lopez-Ortiz moved for suppression of his prior removal, an essential element of the

---

[1] In relevant part, 8 U.S.C. 1326 provides:
(a)Subject to subsection (b) of this section, any alien who—

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Criminal penalties for reentry of certain removed aliens. Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection--

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both.

3

illegal reentry offense, arguing that his removal hearing failed to afford due process. His due process challenge was based on the Immigration Judge's failure to inform him of the possibility of § 212(c) relief as well as the judge's advice that Lopez-Ortiz had the right to appeal but would likely be unsuccessful.[2]

The district court granted Lopez-Ortiz's motion to suppress the removal order and dismissed the indictment. The United States filed this expedited appeal.

II. STANDARD OF REVIEW

When considering the district court's ruling on a motion to suppress, we review conclusions of law *de novo* and findings of fact for clear error. United States v. Hernandez, 279 F.3d 302, 306 (5th Cir. 2002). We view the evidence in a light most favorable to the party who prevailed in the district court. Id. at 306.

III. COLLATERAL CHALLENGE OF THE PRIOR REMOVAL

Lopez-Ortiz's motion to suppress is a collateral challenge governed by 8 U.S.C. 1326(d) and the Supreme Court's decision in United States v. Mendoza-Lopez, 481 U.S. 828, 107 S. Ct. 2148 (1987). See, e.g., United States v. Benitez-Villafuerte, 186 F.3d 651, 658-59, (5th Cir. 1999). In Mendoza-Lopez, the district court

---

[2] Lopez-Ortiz argued also that the removal hearing was fundamentally unfair because his 1995 conviction was not an aggravated felony as defined in 8 U.S.C. 1101(a)(43)(B). Lopez-Ortiz concedes that this argument is foreclosed by our holding in United States v. Hernandez-Avalos, 251 F.3d 505 (5th Cir.), cert. denied, 122 S. Ct. 305 (2001), but raises the issue to preserve it for further appeals in his case.

4

dismissed indictments against defendants charged with illegal reentry under 8 U.S.C. § 1326. The Immigration Judge who presided over the defendants' deportation hearing had not explained adequately their eligibility to apply for suspension from deportation and had accepted their unconsidered waivers of appeal.[3] The district court held, and the Eighth Circuit affirmed, that the deportation hearing violated due process. The United States appealed, arguing that collateral review of a final deportation order was neither authorized by 8 U.S.C. § 1326 nor required by the Constitution. The United States did not seek, and the Supreme Court did not provide, review of the conclusion that the deportation hearing was fundamentally unfair.[4] The Court held that due process requires collateral review of deportation orders used in § 1326 prosecutions, explaining that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Id. at 2155.

---

[3] What was called "deportation" in pre-IIRIRA terminology is now referred to as "removal."

[4] The Court wrote: "The United States has asked this Court to assume that respondents' deportation hearing was fundamentally unfair in considering whether collateral attack on the hearing may be permitted. We consequently accept the legal conclusions of the court below that the deportation hearing violated due process." U.S. v. Mendoza-Lopez, 107 S. Ct. 2148, 2156 (1987).

Following Mendoza-Lopez, this court developed a three-part test for challenge of a prior removal to be used in a § 1326 prosecution. Our interpretation of Mendoza-Lopez required an alien challenging a prior removal to establish that (1) the removal hearing was fundamentally unfair; (2) the hearing effectively eliminated the right of the alien to challenge the hearing by means of judicial review of the order; and (3) the procedural deficiencies caused the alien actual prejudice. See United States v. Lopez-Vasquez, 227 F.3d 476, 483 (5th Cir. 2000). This interpretation of Mendoza-Lopez effectively was codified, See Lopez-Vasquez, 227 F.3d 476, 484, in 8 U.S.C. § 1326(d), which provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in section (a)(1) or subsection (b) of this section unless the alien demonstrates that:
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

In asserting that the district court was correct to suppress his prior removal, Lopez-Ortiz emphasizes the similarities between his removal hearing and the one at issue in Mendoza-Lopez. Mendoza-Lopez is instructive on the issue whether Lopez-Ortiz was deprived of judicial review. Mendoza-Lopez, 107 S. Ct. at 2156. However, deprivation of judicial review is only one element of the

6

collateral attack.  See Lopez-Vasquez, 227 F.3d 476; United States v. Palacios-Martinez, 845 F.2d 89, 91 (5th Cir. 1988)(explaining that Mendoza-Lopez "established the second requirement which is that a collateral attack on a deportation hearing should be allowed if, *in addition to being fundamentally unfair*, the hearing effectively eliminated the right of the alien to challenge the hearing by means of review of the deportation order")(emphasis added); 8 U.S.C. 1336(d).  We still must determine whether Lopez-Ortiz's hearing was fundamentally unfair.[5]

Lopez-Ortiz asserts that the Immigration Judge's failure to inform him of the possibility of § 212(c) relief rendered his removal hearing fundamentally unfair.  At the time of Lopez-Ortiz's hearing, the Board of Immigration Appeals had decided that the abolition of §212(c)relief was applicable to aliens, such as Lopez-Ortiz, who had been convicted of aggravated felonies and whose removal proceedings commenced after the effective date of IIRIRA.

---

[5]  Lopez-Ortiz argues that this court interpreted Mendoza-Lopez as holding that failure to advise of discretionary relief and acceptance of unconsidered waiver of appeal violate due process, citing United States v. Saucedo-Velasquez, 843 F.2d 832 (5th Cir. 1988).  In its discussion of Mendoza-Lopez, this court stated: "The Court then went on to hold that due process requires the right to a collateral challenge to the deportation proceeding as an element of a criminal offense at least when there was a failure to explain either the right to judicial review of the deportation proceeding or a relevant right to apply for suspension of deportation."  Id at 832.  Saucedo-Velasquez notes only that collateral challenge must be available to an alien charged with illegal reentry who was effectively deprived of judicial review of his removal proceeding. Id at 834.  However, demonstration of effective deprivation of judicial review is only one step toward success in the collateral attack.

<u>In Re Soriano</u>, 21 I.& N. Dec 516, 519 (1996).[6]  After <u>In Re Soriano</u>, Immigration Judges conducted removal proceedings with the understanding that aliens with aggravated felony convictions were ineligible for § 212(c) relief.  Thus, it is no surprise that Lopez-Ortiz was not told about § 212(c) relief during his removal proceeding.

In 2001, three years after Lopez-Ortiz's removal was final, the Supreme Court held that § 212(c) relief "remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for section 212(c) relief at the time of their plea under the law then in effect."  <u>INS v. St. Cyr</u>, 533 U.S. 289, 121 S. Ct. 2271, 2293 (2001).  Thus, contrary to the understanding of the INS and the Immigration Judge who conducted his hearing, Lopez-Ortiz was eligible for § 212(c) relief.

The government argues that <u>St. Cyr</u> should not affect our evaluation of Lopez-Ortiz's removal hearing because the Supreme Court has held that new rules of civil law do not apply retroactively to cases not on direct review.  <u>Harper v. Virginia Department of Taxation</u>, 509 U.S. 86., 113 S. Ct. 2510.  The government's error is in its view of <u>St. Cyr</u> as announcing a new rule.  <u>St. Cyr</u> was a case of statutory interpretation. 121 S. Ct.

---

[6] This circuit later affirmed the position taken by the BIA. <u>See Requena-Rodriguez v. Pasquarell</u>, 190 F.3d 299, 306-308 (5th Cir. 1999); <u>Alfarache v. Cravener</u>, 203 F.3d 381, 383 (5th Cir. 2000).

at 2278.  As such, its holding did not change the law.  <u>See Rivers v. Roadway Express, Inc.</u>, 511 U.S. 298, 114 S. Ct. 1510 (1994).  Rather, <u>St. Cyr</u> "finally decided what [IIRIRA] had *always* meant and explained why the [BIA and the] Courts of Appeals had misinterpreted the will of the enacting Congress." 511 U.S. at 313 n.12 (emphasis in original).  Therefore, <u>St. Cyr</u> established Lopez-Ortiz's eligibility for § 212(c) relief at the time of his removal, and the Immigration Judge's contrary understanding, although in compliance with BIA precedent, was an erroneous application of the law.  This error informs our evaluation of the fundamental fairness of the removal hearing.

Fundamental fairness is a question of procedure.  <u>Lopez-Vasquez</u>, 227 F.3d at 484.  Removal hearings are civil proceedings, not criminal; therefore, procedural protections accorded an alien in a removal proceeding are less stringent than those available to a criminal defendant.  <u>Benitz-Villafuerte</u>, 186 F.3d 651, 657. (citing <u>Ramirez-Osorio</u>, 745 F.2d 937, 944).   The Supreme Court has stated that due process requires that an alien who faces deportation be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard.  <u>Kwong Hai Chew v. Colding</u>, 344 U.S. 590, 597-98, 73 S. Ct. 472, 97 L. Ed 576 (1953).  The record establishes, and Lopez-Ortiz does not contest, that he was provided with these protections.  Because he was provided with the

9

protections mandated by the Supreme Court, Lopez-Ortiz's challenge of the fundamental fairness of his removal hearing rests on the Immigration Judge's error in not explaining his eligibility for § 212(c) relief.

Lopez-Ortiz presupposes that eligibility for discretionary relief under § 212(c) is an interest warranting constitutional due process protection. We disagree. St. Cyr's holding was not grounded in § 212(c) relief having the status of a constitutionally protected interest; rather, it was based on the Court's interpretation of IIRIRA. In fact, § 212(c) relief, because it is available within the broad discretion of the Attorney General, is not a right protected by due process.

This circuit has noted that § 212(c) relief "'was couched in conditional and permissive terms. As a piece of legislative grace, it conveyed no rights, it conferred no status'", and its denial does not implicate the Due Process clause. Alfarache v. Cravener, 203 F.3d 381 (2000)(quoting Cadby v. Savoretti, 256 F.2d 439, 443 (5th Cir. 1956).[7] See also Gonzalez-Torres v. INS, 213 F.3d 899, 903 (5th Cir. 1999)(alien has no constitutional right to

---

[7] Alfarache was decided before St. Cyr and incorrectly treated the petitioner as ineligible for § 212(c) relief. The petitioner in Alfarache argued that the INS's delay of deportation proceedings resulted in their commencement after IIRIRA ostensibly eliminated his eligibility for § 212(c) relief. Our holding that the petitioner had no constitutional entitlement to eligibility for discretionary relief is predicated on the nature of discretionary relief, not on our understanding that abolishment of § 212(c) was retroactive.

discretionary relief over which the Attorney General exercises "unfettered discretion".) (citing <u>Tefel v. Reno</u>, 180 F.3d 1286, 1301-02 (11th Cir. 1999), <u>cert. denied</u>, 530 U.S. 1228, 120 S.Ct. 2657, 147 L.Ed.2d 272 (2000)). Other circuits considering the effect of <u>St. Cyr</u> likewise have held that discretionary relief is not a vested right meriting due process protection. <u>See</u> <u>Oquejiofor v. Attorney General</u>, 277 F.3d 1305, 1309 (11th Cir. 2002)("[A]n alien has no constitutionally protected right to discretionary relief or to be eligible for discretionary relief."); <u>Smith v. Ashcroft</u>, 295 F.3d 425 (4th Cir. 2002)(§ 1326 defendant had no liberty or property interest in § 212(c) relief).

Because eligibility for § 212(c) relief is not a liberty or property interest warranting due process protection, we hold that the Immigration Judge's error in failing to explain Lopez-Ortiz's eligibility does not rise to the level of fundamental unfairness. Having determined that Lopez-Ortiz's removal hearing did not violate his right to due process, we need not reach the remaining requirements of our precedents and 8 U.S.C. 1326(d), namely exhaustion of administrative remedies and actual prejudice. We reverse the order of the district court and remand the case for trial.

REVERSED and REMANDED.

11